**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 13-cv-01843-MSK-BNB

**MICHAEL K. TURNER,**

   Plaintiff,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an insurance corporation,**

   Defendant.

___

**OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT**
___

**THIS MATTER** comes before the Court on motions from both parties. The Defendant State Farm Mutual Automobile Insurance Company ("State Farm") filed a Motion for Partial Summary Judgment (**#54**), the Plaintiff Michael K. Turner responded (**#71, 72,**), State Farm replied (**#79**), and Mr. Turner filed a sur-reply (**#90**). Mr. Turner also filed a Motion for Partial Summary Judgment (**#55**) and a supporting Memorandum (**#56**), State Farm responded (**#81**), and Mr. Turner replied (**#83**).

**ISSUES PRESENTED**

In this action, Mr. Turner alleges that State Farm failed to pay benefits that it owed to him under the underinsured motorist ("UIM") provisions of three auto insurance policies. Mr. Turner asserts three claims under Colorado law[1]: (1) breach of insurance contract; (2) unreasonable denial of a claim in violation of C.R.S. §§ 10-3-1115, 1116; and (3) common law bad faith breach of insurance contract. State Farm moves for summary judgment on Mr. Turner's

___

[1] The Court exercises subject matter jurisdiction under 28 U.S.C. § 1332.

1

second claim, contending that he cannot establish elements essential to that claim. Mr. Turner seeks summary judgment quantifying his losses and awarding damages.

## MATERIAL FACTS

The material facts are relatively straight forward. Where there is a dispute, the Court construes the evidence submitted most favorably to the non-movant.

In April 2012, Mr. Turner was injured in a motor vehicle accident involving negligence on the part of another driver. The other driver's policy limit was $25,000. The other driver's insurance carrier accepted full liability and settled in June 2012 for policy limits.

Mr. Turner was insured under three State Farm policies that provided a total of $600,000 in Un/under Insured Motorist (hereafter UIM) coverage. State Farm consented to the settlement between Mr. Turner and the other driver in June 2012, and presumably an UIM claim was filed sometime thereafter.

In January, 2013 Mr. Turner contacted State Farm claims representative Denise Irlando seeking information on the status of his UIM claim, and sent a letter to State Farm that provided information with regard to his loss of earnings and that requested information about the available UIM coverage.

In response, on April 2, 2013, Ms. Irlando made an offer to Mr. Turner to settle his UIM claim for $50,000. At the time of making the offer she had authority to settle Mr. Turner's claim up to $158,747.37. She sent a letter confirming the offer the next day. Mr. Turner responded on May 1, 2013 demanding payment of his policy limits - $600,000. A week later, in a phone conversation, Mr. Turner told Ms. Irlando that he was being tested for traumatic brain injury (TBI) and there was a possibility that he would lose his job. Ms. Irlando informed Mr. Turner that a TBI diagnosis could support a reevaluation of the value of his claim. Ms. Irlando requested

medical records. The next day, Ms. Irlando sent Mr. Turner a check for $50,000 with a letter that advised that the payment was an advance that would not impact final determination of Mr. Turner's claim. The letter expressly stated "This payment is made in advance without prejudicing the right to receive a higher amount in the future through continuing negotiations or alternative means of resolution." On May 17, 2013, Ms. Irlando received records documenting that Mr.Turner had been referred to a neuropsychologist.

Effective June 5, 2013, Mr. Turner was relieved from his duties as an air traffic controller. Believing that his State Farm Policies required him to initiate suit to resolve his UIM claim, Mr. Turner initiated this action on June 11, 2013 in the district court of El Paso County, Colorado. The action was removed to this Court.

In January 2014, the Regional Flight Surgeon determined that Mr. Turner's diagnosis of post concussive syndrome medically disqualified him from performing Air Traffic Control duties.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser–Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of

and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed.R.Civ.P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward,* 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a prima facie claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

Tis case involves cross-motions for summary judgment. Because the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a

*prima facie* case or to establish a genuine dispute as to material fact, the cross motions will be evaluated independently. *In re Ribozyme Pharmaceuticals, Inc., Securities Litig.,* 209 F.Supp.2d 1106, 1112 (D. Colo. 2002); *see also Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir. 2000).

## ANALYSIS

### A. State Farm's Motion

State Farm seeks summary judgment in its favor on Mr. Turner's second claim – that State Farm delayed or denied his claim in violation of C.R.S. § 10-3-1115. This statute provides in pertinent part that "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits" owed to an insured. It further provides that an insurer's action is unreasonable if "the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." C.R.S. § 10-3-1115(2).[2]

To prevail on a cause of action based on violation of C.R.S. § 10-3-1115, Mr. Turner must prove that 1) State Farm delayed or denied payment of benefits owed to him; and 2) State Farm's delay or denial of payment was without a reasonable basis. CJI-Civ.4th, 25:4(2014). State Farm argues that he cannot show either element. Recognizing that proof of both elements is required, a failure to come forward with sufficient, competent evidence to establish either element requires entry of summary judgment.

---

[2] This provision essentially codifies the objective element of the common law tort of bad faith breach of an insurance contract and, thus, provides for recovery if the insurer acted unreasonably under the circumstances. In other words, "only element at issue in the statutory claim is whether an insurer denied benefits without a reasonable basis." *See Vaccaro v. American Family Ins. Group,* 275 P.3d 750, 760 (Colo. App. 2012). In contrast to the common law bad faith standard, a plaintiff can establish that an insurer violated C.R.S. § 10-3-1115 even if the plaintiff's claim for UIM benefits was "fairly debatable." *See Vaccaro,* 275 P.3d 750, 760.

1. **Claim Denial**

The record establishes that there has been no denial of Mr. Turner's claim against his State Farm policies. Although Mr. Turner complains that Ms. Irlando took standard language out of State Farm's stock "impasse" letter in drafting the letter sent to him with a $50,000.00 payment, the change is of no import with regard to this issue. The letter sent to Mr. Turner (#72-11) expressly states that there was no final determination of his claim and that the $50,000 payment was an advance pending resolution of the claim. Indeed, Mr. Turner brought this suit believing that the State Farm Policies required him to do so in order to resolve the claim. (#72 p.11 referring to #72-16).

2. **Delay in Claim Payment**

State Farm also argues that Mr. Turner cannot show that there was any delay in resolving his claim. Much of the parties' argument focuses on whether there was "unreasonable delay" in payment by State Farm – and in that argument the parties point to various things that State Farm did or did not do in evaluating Mr. Turner's claim or in communicating with him. The gist of such arguments is that the conduct was unreasonable or not, rather than whether there was any delay in payment.

Turning to the express language of C.R.S. Section 10-3-1115, the harm addressed is delay or denial, not "unreasonable" behavior. Indeed, as written, "unreasonable" is an adjective modifying the noun "delay." This suggests, consistent with the Colorado pattern jury instructions, that proving violation of the statute in absence of claim denial, requires proof of delay of claim payment before consideration of whether the delay was unreasonable.

Logically, to establish that there was a delay in payment of Mr. Turner's claim would require a comparison between the time taken by State Farm to pay it, and some objective

standard as to timeliness for paying similar claims. Unfortunately, 10-3-1115 does not provide supply such standard.

State Farm urges the Court to apply regulations imposed by the Colorado Division of Insurance as the objective standard. It points particularly to Amended Regulation 5-1-14. This Regulation sets requirements and penalties for failure to promptly address first party property and casualty claims, which include claims for UIM benefits. *See,* 3 Colo. Code Regs. 702–5:5–1–14 (2012) (*cited in Baker v. Allied Prop. & Cas. Ins. Co.*, 939 F.Supp.2d 1091, 1108-09 (D.Colo. 2013), as amended (June 12, 2013)). The regulation requires:

> All insurers authorized to write property and casualty insurance policies in Colorado, shall make a decision on claims and/or pay benefits due under the policy within **sixty (60) days after receipt of a valid and complete claim unless there is a reasonable dispute** between the parties concerning such claim, and provided the insured has complied with the terms and conditions of the policy of insurance.

3 Colo. Code Regs. 702–5:5–1–14, § 4(A)(1) [emphasis supplied].

The Regulation explains that a "valid and complete claim" is "received" by the insurer when one of the following occurs:

> (1) All information and documents necessary to prove the insured's claim have been received by the insurer;
> ***
> (5) There are no indicators on the claim requiring additional investigation before a decision can be made; and/or
> ***
> (7) Negotiations or appraisals to determine the value of the claim have been completed; and/or
> (8) Any litigation on the claim has been finally and fully adjudicated.
>
> *Id.* § 4(A)(2)(a).

The Regulation also defines "reasonable dispute" as follows:

> b. A reasonable dispute may include, but is not limited to:
> (1) Information necessary to make a decision on the claim has not been submitted or obtained; or

7

>       (2) Conflicting information is submitted or obtained and additional investigation is necessary; or
>       (3) The insured is not in compliance with the terms and conditions of the policy; or
>       (4) Coverage under the policy for the loss claimed has not been determined; or
>       (5) Indicators are present in the application or submission of the claim and additional investigation is necessary; or
>       (6) Litigation is commenced on the claim; or
>       (7) Negotiations or appraisals are in process to determine the value of a claim.
>
> *Id.* § 4(A)(2)(b).

Applying this Regulation, State Farm contends that no delay in payment occurred because it never received a valid and complete UIM claim from Mr. Turner and there reasonable dispute as to the value of Mr. Turner's claim.

Mr. Turner argues for application of another standard. First, he contends that standards imposed by the Colorado Division of Insurance are applicable only in administrative proceedings adjunct to state regulation of insurance companies but should not be applied as between insurer and insured in a private context. In support of this argument, he asserts that courts do not apply such standards in litigation such as this. Second, he argues that the standard for payment (and thus determining when there is delay) is found in C.R.S. § 10-4-642 which provides "[i]f the resolution of a claim requires additional information, the insurer shall, within thirty calendar days after receipt of the claim, give to the claimant a full explanation in writing of what additional information is needed to resolve the claim, including any additional medical or other information related to the claim." C.R.S. § 10-4-642(6)(b). The claim shall be paid, denied, or settled within thirty days of the insurer receiving the requested information or within ninety calendar days after the insurer received the claim. C.R.S. § 10-4-642(6)(b)-(c). Although "extraordinary or unusual claims with extenuating circumstances" might warrant an exemption from the ninety-day limit, in such cases the insurer "shall pay, deny, or settle the claim within

8

one hundred eighty days after receipt of the claim." C.R.S. § 10-4-642(6)(c).  Finally, he relies upon conclusory testimony by a designated expert witness, Richard Laugeson, that State Farm "unreasonably delayed and denied" his claim.

In determining what standard applies to determine whether there has been a delay in payment, the Court notes that a number of courts have applied 3 Colo. Code Regs. 702–5:5–1–14.  *See, e.g.*, *Rabin v. Fidelity National Prop. and Cas. Ins. Co.*, 863 F.Supp.2d 1107, 1114 (D.Colo. 2012); *Baker*, 939 F.Supp.2d at 1108; *Toy v. American Family Mut. Ins. Co.*, Not Reported in F.Supp.2d, 2014 WL 483473 (D.Colo.).  Thus, this Court does not reject them out of hand.

Instead, the Court observes that the standards found in Regulation 5-1-14 and C.R.S. § 10-4-642(6) are not necessarily incompatible. Regulation 5-1-14 establishes the circumstances in which the Commissioner of Insurance may impose penalties upon an insurer for failure to make a timely decision or payment. *Id.* at §2. It augments the standards found in C.R.S. § 10-4-642(6), but does not necessarily replace them.  Arguably State Farm's conduct must conform to the requirements of both Regulation 5-1-14 and C.R.S. § 10-4-642(6).

These standards, however, both key off of the date that a claim is received by the insurer. Although the parties agree that a UIM claim was presented to State Farm, the record is unclear as to when State Farm received that claim.  The record does not establish that date either factually or legally. From a factual perspective, the first reference to an UIM claim is in a note in State Farm's files, dated April 25, 2012, to return Mr. Turner's call to discuss UIM benefits.  There is no other reference until Mr. Turner's phone call on January 17, 2013.  From a legal perspective, the UIM claim is different from a simple casualty claim made under an insurance policy because the existence of an UIM claim turns on the relationship between the insured's losses and

amounts recovered from others. The parties have not advised the Court of when the UIM arose or whether that is the date of receipt.[3] Thus the record is devoid of evidence that would allow calculation of timeliness under either applicable statutes or regulations.

Mr. Turner seems to suggest that there is another standard that could be applied to demonstrate delay – industry standards. Evidence of industry standards is often established through testimony by an expert witness. *See Goodson v. American Standard Ins. Co.,* 89 P.3d 409, 415 (Colo. 2004). For this purpose, Mr. Turner proffers Mr. Laugeson's expert testimony.[4] Mr. Laugeson's affidavit is found at (#72-13), excerpts from his March 27, 2014 report are found at (#72-14), and his letter in response to another witness' opinions is found at (#72-15). In his affidavit Mr. Laugeson details his extensive legal experience in dealing with insurance issues. Many his opinions are legal opinions that State Farm violated various statutes and regulations, including those at issue. Despite his experience, Mr. Laugeson's legal opinions as to ultimate issues are not admissible, and therefore the Court disregards them. *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988).

Mr. Laugeson, however, does make reference to "Insurance Industry Standards" in his response to the report of another witness. *See* (#72-15 p. 2). He states that State Farm "delayed and denied" payment in violation of "Insurance Industry Standards." Nothing further in the record, however, describes or identifies "Insurance Industry Standards" or specifies what standard (s) governs timeliness in claim payment. Mr. Laugeson states that the standards are "listed at pages 9 and 10 of my March 26, 2014 opinion letter in this matter". These pages are

---

[3] Similarly, they have not grappled with the effect of a partial payment of $50,000 upon the timeliness of claim administration.

[4] Although neither party has requested a determination of the admissibility of Mr. Laugeson's testimony under FRE 702, the Court independently considers his proffered testimony with such standards in mind.

included at (#72-14). Page 9 and the first part of page 10 are contain only a series of bullet points followed by entries described as duties, obligations and standards set forth in statutes and jury instructions. The statutes and jury instructions constitute legal standards rather than industry standards. The other entries characterized as duties and obligations have no source, context or other information about how they were formulated or why they are considered industry standards. The remaining text on page 10 is comprised of four conclusory statements:

> The Standards are not suspended when it becomes necessary to force an insurer to comply. The duties are non-delegable. An Insured should not have to hire an attorney to bring a lawsuit to get his/her benefits paid.
>
> Delay and undervaluing are forms of improper denial because , as with denial, the insured is faced with either having to forego part of his/her claim or hire an attorney [with its incident expense], and possibly bring a suit [with its incident trauma, inconvenience and expense].
>
> State Farm's purported bases for its denial/delay of UIM benefits are apparently the scattergun assertions set for the in its Answer. None of those assertions had/have any merit whatsoever. They instead appear to have been asserted as tactic for the purpose of hindrance, delay, intimidation, discouragement and attempted justification for State Farm's breaches of insurance industry Standards and duties of good faith and fair dealing.
>
> State Farm's most egregious conduct is its tactic of a low-ball "offer" with no further payment to force its insured to accept less than was owed or miss the running of the statute of limitations. The tactic was not disclosed to Mr. and Mrs. Turner . . .

Based on the record submitted, Mr. Laugeson's statements lack adequate foundation under FRE 702. They are conclusory, *ipse dixit*, statements. It is not clear whether they are based on a reliable methodology, personal experience, or a matter of personal belief. Without determining whether they are ultimately admissible at trial, they are properly disregarded at this juncture. But even if not disregarded, they do not identify any Insurance Industry Standard that would govern whether State Farm's payment on Mr. Turner's claim was timely or delayed. Thus, Mr. Turner has failed to show a standard which if applied would establish that State Farm delayed payment to him.

In the absence of evidence establishing a denial or delay in payment, Mr. Turner cannot prove violation of C.R.S. Section 10-3-1115. Therefore, State Farm is entitled to judgment on this claim.

### B. Mr. Turner's Motion for Partial Summary Judgment

Mr. Turner also requests for partial summary judgment (**#55**) "on the issue of damages as to his loss of his air traffic controller job due to the injuries he sustained as a result of the automobile accident of April 22, 2012." Essentially, Mr. Turner's motion requests only that the Court rule that there is no genuine dispute that Mr. Turner termination from his job as an air traffic controller was due to injuries that he sustained from the automobile accident in April 2012.

The primary factual disagreement between the parties whether Mr. Turner's condition was caused by the automobile accident. Mr. Turner argues that he suffers from post-concussive syndrome as a result of the automobile accident. He submits the opinions of treating and consulting physicians supportive of that argument. Medical opinions proffered by State Farm dispute that Mr. Turner suffers from post-concussive syndrome caused by the automobile accident, and suggest that any symptoms he has are more likely the result of sleep apnea. This creates a genuine dispute as to a material fact, which requires a trial.

## CONCLUSION

**IT IS THEREFORE ORDERED** that

(1) State Farm's Motion for Partial Summary Judgment (**#54**) is **GRANTED**. Summary Judgment is entered in favor of State Farm and against Mr. Turner with regard to his Second Claim for relief – Violation of C.R.S. §§ 10-3-1115,1116.

(2) Mr. Turner's Motion for Partial Summary Judgment (**#55**) is **DENIED**.

(3) The parties shall jointly contact chambers to schedule a Final Pretrial Conference.

Dated this 19th day of March, 2015.

**BY THE COURT:**

_Marcia S. Krieger_
Marcia S. Krieger
Chief United States District Judge